UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF NEW YORK

_____

In re:

    Michael J. Rogers,                                Bankruptcy Case No. 17-21187-PRW
      dba Roger's Farms,                            Chapter 12

                Debtor.
_____

Jeffrey Snider, Valerie Snider,
CAV Farms Inc., Medio Cielo, LLC,
individually and as trustees of the Snider
Living Trust,

                Plaintiffs,                     Adversary Proceeding No. 18-2001-PRW

    v.

Michael J. Rogers,

                Defendant.
_____

**DECISION AND ORDER
GRANTING MOTION TO DISMISS,
DENYING MOTION TO CONDUCT RULE 2004 EXAMINATION,
DENYING ORAL APPLICATION TO CONVERT TO CHAPTER 7,
AND DISMISSING ADVERSARY PROCEEDING**

PAUL R. WARREN, U.S.B.J.

      A typical Chapter 12 case is filed by a farmer, hoping to save a struggling farm business while under the protection of the Code. This is not a typical Chapter 12 case. This case involves the disappearance of 2,100 head of cattle and over $500,000 of collateral just prior to the commencement of the case. During the meeting of creditors, the Debtor responded to the

legitimate inquiries by the Chapter 12 Trustee ("Trustee") and the creditors, concerning these and other unusual events, by invoking the Fifth Amendment. And in response to requests for documents and business records, the Debtor alternatively claimed that none exist, or they exist but only in the confines of his mind, or they exist but are locked in a safe controlled by his father. A troublesome tale to be sure.

The Trustee has moved to dismiss this case under 11 U.S.C. § 1208(c), alleging that cause exists for the Court to quickly end this case. Community Bank has moved for leave to examine the Debtor under Rule 2004 FRBP—presumably expecting the Court to referee the discovery dispute that is almost certain to result. And, most recently, Jeffrey Snider, Valerie Snider, and Medio Cielo, LLC filed a complaint objecting to the dischargeability of a debt owed by the Debtor. It is a sure bet that more creditors will file actions seeking determinations that debts owed to them by Rogers are not dischargeable.

The Trustee's motion to dismiss for cause under 11 U.S.C. § 1208(c) is **GRANTED**. The case is **DISMISSED**. At the request of the United States Trustee, Rogers is barred from filing for bankruptcy relief *under Chapter 7 for 180 days* from entry of the order of dismissal and Rogers is barred from filing for relief *under Chapter 11, 12, or 13 for one year*, under 11 U.S.C. §§ 109(g)(1), 349(a), and 105(a), to prevent the Debtor from misusing the bankruptcy system. The oral application of Community Bank to convert the case to Chapter 7 is **DENIED**, under 11 U.S.C. § 1208(d). The motion of Community Bank to examine the Debtor under Rule 2004 FRBP is **DENIED AS MOOT**. The Adversary Proceeding by the Sniders (AP No. 18-2001-PRW), in which issue has not yet been joined, is **DISMISSED**—without prejudice to the plaintiffs seeking relief in the state courts—in the exercise of the Court's discretion not to retain jurisdiction. The Clerk of Court is ordered to refund the filing fee to the plaintiffs in the Adversary Proceeding, in

the interest of justice. The Clerk of Court is further ordered to close the Chapter 12 case and the Adversary Proceeding immediately.

## JURISDICTION

The Court has jurisdiction under 28 U.S.C. §§ 157(a), 157(b)(1), and 1334(b). This is a core proceeding under 28 U.S.C. § 157(b)(2)(A), (I), and (O). This decision constitutes the Court's findings of fact and conclusions of law to the extent required by Rule 7052 FRBP.

## BACKGROUND

The Debtor filed this Chapter 12 case in November 2017, claiming to be a family farmer, with 34 head of cattle. (ECF No. 1). His schedules list secured debt of nearly $700,000 and unsecured debt of nearly $1.0 million, far exceeding the value of scheduled assets. The Statement of Financial Affairs paints a fairly unremarkable picture—listing no transfers to insiders, no transfers to third parties, and no property held for third parties. (ECF No. 31, Official Form 107). That same Statement discloses gross income of approximately $10.0 million in each 2015 and 2016. But, for 2017, the Debtor claims that his gross income from farming was $0.00. (*Id.* at Schedule I, "Business Income and Expenses"). That's odd.

The Trustee paints a much darker and more sinister picture of the Debtor's cattle farming business, in the motion to dismiss. (ECF No. 43). The basis for the Trustee's motion is the Debtor's testimony—or, more precisely, the Debtor's refusal to testify—at the meeting of creditors held on December 15, 2017. The Debtor refused to answer questions concerning assets, liabilities, transfers to insiders, sources of funding, disposition of seemingly all assets on the eve of bankruptcy, and transactions with related business entities and family members. (*Id.*). The Debtor also either refused to provide documents related to his business dealings or indicated that no documents existed. The Trustee's motion has been supported by Eugene Nicholas, a creditor

3

scheduled by the Debtor as having provided a business loan (in an amount that the Debtor doesn't seem to recall). (ECF Nos. 51, 31, Schedule E/F at 4). The Debtor does not oppose the motion to dismiss. (ECF No. 53).

Meanwhile, Community Bank, a secured creditor owed more than $310,000, has moved for an order permitting an examination of the Debtor under Rule 2004 FRBP. (ECF Nos. 41, 42). The Bank would like the Debtor to explain the Houdini-like disappearance of 2,100 head of cattle, with a value of more than $600,000, along with other hard assets worth $550,000, all since the autumn of 2017. The Bank also requests that the Court extend its time to file a complaint objecting to the Debtor's discharge, presumably under Rule 4004(b)(1) FRBP. The Bank's motion is supported by Mr. Nicholas. (ECF No. 52). But, at oral argument, counsel to Mr. Nicholas indicated that he only supported the Bank's motion as a backup position in the event that dismissal was not granted.

And, rounding out the field of creditors displeased with the Debtor, the Sniders (and two business entities) recently filed a complaint against the Debtor, seeking to have debts totaling over $1.1 million declared to be nondischargeable, under 11 U.S.C. § 523(a)(2) and (4), based on the Debtor's alleged fraudulent conduct. (AP No. 18-2001-PRW, ECF AP No. 1). The docket indicates that service of the summons and complaint was made by mail on January 23, 2018. Issue has not been joined yet, and the time to answer or otherwise appear will not arrive until late February 2017, under Rule 7012(a) FRBP. If this case survives the Trustee's motion to dismiss (which it won't), it would be fair to predict that—like cows coming home—many more creditors will file similar actions against the Debtor objecting to the discharge of their debts.

At the January 25, 2018 hearing on the motions, counsel to several of the creditors in this case—including Community Bank, CAV Farms Inc., Medio Cielo LLC, the Sniders, and Mr.

4

Nicholas—appeared. But, the Debtor did not. One of the creditors suggested that the 2,100 missing cattle never existed—raising the question of what, if any, assets there are to administer in the bankruptcy case were it to be converted to Chapter 7. Another creditor speculated that the misplaced cattle may have existed, but their ear tags may have been changed by the Debtor, so that garden variety (and much less valuable) "corn-fed cows" could be passed off as (very valuable) "grass-fed cows." A representative from the USDA was also present at the hearing. USDA regulates the cattle trading industry. The Court was advised by the USDA that the sale of corn-fed cattle, represented by a seller to be grass-fed cattle, was a very big deal and a serious wrongdoing. The Court is mindful that the allegations by the creditors concerning cow-swapping raise significant public health, safety, and trust concerns. They may also be of interest to federal and state authorities with jurisdiction over criminal matters. A speedy resolution of these issues is in the best interest of creditors and the public, and is best left for the state courts.

## DISCUSSION

This case does not appear to have been filed to help a family farmer save a struggling farm. Instead, it seems more likely that the case was filed to hold off creditors, while the tracks of 2,100 missing cows faded. But no bankruptcy purpose would be served in allowing this Chapter 12 case to go forward in this court. It seems likely that, if the allegations of the Trustee and creditors are correct, many of the creditor claims would be nondischargeable. The rights and remedies of the creditors can be effectively and quickly determined by the state courts.

A.  **Dismissal for Cause Is Appropriate Under 11 U.S.C. § 1208(c).**

The Trustee seeks dismissal under 11 U.S.C. § 1208(c)(1) and (9), alleging gross mismanagement by the Debtor and diminution of the estate and the absence of a reasonable

5

likelihood of rehabilitation. (ECF No. 43). The Debtor does not resist. (ECF No. 53). And one of the Debtor's significant business lenders supports the motion to dismiss. (ECF No. 51).

The grounds listed in 11 U.S.C. § 1208(c), like those under § 1112(b) and § 1307(c), are illustrative and not exhaustive. Here, it is very difficult to point to a specific fact demonstrating that the Debtor has grossly mismanaged *the estate* or that there has been a diminution of *the estate* because there are no books or records for the Trustee to point to—and the Debtor isn't talking. But it seems fairly certain that the Debtor will have a very difficult time carrying his burden of proof on the issue of "good faith" under 11 U.S.C. § 1225(a)(3) and § 1208(c). The good faith standard in Chapter 12 is the same requirement as under Chapter 13. 8 *Collier on Bankruptcy* ¶ 1225.02[3] (Alan S. Resnick & Henry J. Sommer eds., 16th ed.). "Cases considering the scope of the good faith requirement under those two chapters ought to be equally relevant in chapter 12 cases." *Id.* (citing *In re Mann Farms, Inc.*, 917 F.2d 1210 (9th Cir. 1990)).

"The terms of good faith and bad faith do not turn on the subjective intent of the debtor. Rather, the concepts encompass equitable limitations placed on debtors by the courts to insure that their reasons for filing lie within the legitimate scope of the bankruptcy laws." *In re Ryder Farms, Inc.*, No. 02-3201-CH, 2002 Bankr. LEXIS 2034, at *22 (Bankr. S.D. Iowa Dec. 30, 2002) (internal citation and quotations omitted). Courts agree that there is no one factor that should be viewed as a dispositive indication of a debtor's good faith. *In re Pertuset*, No. 12-8014, 2012 Bankr. LEXIS 5792, at *43-44 (B.A.P. 6th Cir. Dec. 18, 2012); *Ryder Farms*, 2002 Bankr. LEXIS 2034, at *22; *In re Girdaukas*, 92 B.R. 373, 377 (Bankr. E.D. Wis. 1998). "Courts should also consider whether the debtor concealed assets, has been evasive toward the court and creditors, violated the Bankruptcy Code, or violated court orders. Evasion includes the failure to provide honest and complete information concerning financial affairs . . . ." *Ryder Farms*, 2002 Bankr. LEXIS 2034,

at *22-23. Bad faith alone is sufficient cause to dismiss a Chapter 12 case. *See id.* Further, it is doubtful that a debtor could ever obtain confirmation of a Chapter 12 plan, while claiming the Fifth Amendment privilege, because the debtor has the burden of proving good faith under 11 U.S.C. § 1225(a)(3). *See Girdaukas*, 92 B.R. at 377; *see also In re Abbas*, No. 07-71828-SCS, 2007 Bankr. LEXIS 4342, at *22 (Bankr. E.D. Va. Dec. 20, 2007).

Here, the Court has no hesitation in finding that the Debtor filed this Chapter 12 case in bad faith. In *In re Pertuset*, the Bankruptcy Appellate Panel for the Sixth Circuit identified factors to be considered by the Court in assessing a debtor's bad faith in a Chapter 12 case. *Pertuset*, 2012 Bankr. LEXIS 5792, at *43. The *Pertuset* factors leading this Court to conclude that the Debtor filed this Chapter 12 case in bad faith include:

(1) the likelihood that much of the debt may be nondischargeable in Chapter 7;

(2) the adverse impact on creditors of the Debtor's actions in dissipating substantially all assets in the weeks leading up to filing;

(3) the Debtor's refusal to be forthcoming with the Court, the Trustee, and creditors concerning assets, liabilities, and prospects for reorganization;

(4) the Debtor's apparent lack of sincerity in seeking bankruptcy relief; and

(5) the immovable impediment to ever confirming a plan created by the Debtor's invocation of the Fifth Amendment privilege.

The finding of bad faith is, alone, cause to dismiss this Chapter 12 case under 11 U.S.C. § 1208(c). The motion of the Chapter 12 Trustee is, for the reasons specified in this decision, **GRANTED**. The motion of Community Bank to conduct a Rule 2004 examination is **DENIED AS MOOT**.

B. <u>**Conversion to Chapter 7 Is Not Appropriate Under 11 U.S.C. § 1208(d).**</u>

At the hearing on the motions, counsel to Community Bank made an oral application to convert the case to Chapter 7, under 11 U.S.C. § 1208(d). As an initial matter, the oral request is

7

procedurally infirmed because § 1208(d) requires notice of a motion to convert a Chapter 12 case to Chapter 7. Second, § 1208(d) requires a "showing that the debtor has committed fraud *in connection with the case*." 11 U.S.C. § 1208(d) (emphasis added). Although the creditors have made allegations that the Debtor may have committed fraud in the conduct of his cattle trading business, there has been no evidence offered that the Debtor has committed fraud *in connection with the bankruptcy case*. Finally, converting this case to Chapter 7 would place a potentially insurmountable burden on a Chapter 7 Trustee to locate and marshal missing cattle, documents, and other items of collateral—without the cooperation of the Fifth Amendment-invoking Debtor and without any cash proceeds available to fund litigation. And, even if successful, much of the hard collateral and cattle were subject to security interests of creditors, leaving the unsecured creditors out to pasture. For these reasons, the oral application to convert to Chapter 7 is **DENIED**, under 11 U.S.C. § 1208(d).

**C.    The Court Declines to Retain Jurisdiction Over the Adversary Proceeding.**

As to the remaining Adversary Proceeding by the Sniders and related corporations, the Second Circuit has adopted "the general rule that related proceedings ordinarily should be dismissed following the termination of the underlying bankruptcy case." *In re Porges*, 44 F.3d 159, 162 (2d Cir. 1995). The rationale of the Second Circuit is that "a bankruptcy court's jurisdiction over such related proceedings depends on the proceedings' nexus to the underlying bankruptcy case." *Id.* In deference to the *Porges* general rule concerning the retention of jurisdiction over related proceedings, this Court exercises its discretion and declines to retain jurisdiction over the Adversary Proceeding, in the interest of comity with the state courts. As discussed at the hearing on the motions, there are rights and remedies available to the creditors under New York law, which are more likely to result in a swift resolution of the creditor claims,

8

despite the troubling circumstances surrounding the disappearance of their collateral. Balancing the equities, the Court finds that the interest of creditors and the public would be better served by a resolution in the state courts. The Adversary Proceeding is **DISMISSED**.

## CONCLUSION

The Trustee's motion to dismiss for cause under 11 U.S.C. § 1208(c) is **GRANTED**. The case is **DISMISSED**. At the request of the United States Trustee, Rogers is barred from filing for bankruptcy relief *under Chapter 7 for 180 days* from entry of the order of dismissal and Rogers is barred from filing for relief *under Chapter 11, 12, or 13 for one year*, under 11 U.S.C. §§ 109(g)(1), 349(a), and 105(a), to prevent the Debtor from misusing the bankruptcy system. The oral application of Community Bank to convert the case to Chapter 7 is **DENIED**, under 11 U.S.C. § 1208(d). The motion of Community Bank to examine the Debtor under Rule 2004 FRBP is **DENIED AS MOOT**. The Adversary Proceeding by the Sniders (AP No. 18-2001-PRW), in which issue has not yet been joined, is **DISMISSED**—without prejudice to the plaintiffs seeking relief in the state courts—in the exercise of the Court's discretion not to retain jurisdiction. The Clerk of Court is ordered to refund the filing fee to the plaintiffs in the Adversary Proceeding, in the interest of justice. The Clerk of Court is further ordered to close the Chapter 12 case and the Adversary Proceeding immediately.

**IT IS SO ORDERED.**

DATED: January 25, 2018  _____/s/_____
  Rochester, New York  HON. PAUL R. WARREN
  United States Bankruptcy Judge